FILED
DEC 22 2010
WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

Bettsy Bumpas, in her capacity as the )
Personal Representative of the Estate of )
J.B., Deceased, )
)
                       JURY TRIAL DEMANDED
         Plaintiff, )
)
vs. )   Case No. CIV- CIV 10 - 486 - KEW
)
HOC Industries, Inc., Dollar General )   Judge _____
Corporation, Berry Plastics Corporation, )
Kerr Group, LLC and Kerr Group, Inc. )
)
         Defendants. )   ATTORNEYS LIEN
)   CLAIMED

## COMPLAINT

Comes now the Plaintiff, Bettsy Bumpas, the Personal Representative of the Estate of J.B., Deceased, and for her cause of action against the Defendants, alleges and states as follows:

### THE PARTIES

1. The Plaintiff is Bettsy Bumpas in her capacity as the duly appointed Personal Representative of the Estate of J.B., Deceased. J.B. was the minor child of Bettsy Bumpas and Christopher Bumpas. J. B. is identified by initials pursuant to L.CvR 5.3. The full name of J.B. will be provided to the Defendants under the appropriate circumstances. J.B. was a resident of Duncan, Stephens County, State of Oklahoma at the time of J.B.'s death on June 9, 2009. Bettsy Bumpas was appointed Personal Representative by the District Court of Stephens County, State of Oklahoma on December 13, 2019.

2. Defendant Berry Plastics Corporation is a corporation organized under the

1

*consent form provided*

laws of the State of Delaware. Its principal place of business is in Evansville, Indiana. It is in the business of manufacturing child resistant plastic caps.

3. Defendant Kerr Group, Inc. is a corporation organized under the laws of the State of Delaware. Its principal place of business is in Lancaster, Pennsylvania. It is wholly owned subsidiary of Defendant Berry Plastics Corporation. It is in the business of manufacturing child resistant plastic caps.

4. Kerr Group, LLC is a limited liability company organized under the laws of the State of Delaware. Its principal place of business is in Evansville, Indiana. It is a wholly owned subsidiary of Defendant Berry Plastics Corporation. It is in the business of manufacturing child resistant plastic caps.

5. Defendant HOC industries is a corporation organized under the laws of the State of Kansas. Its principal place business is in Wichita, Kansas. It is in the business of manufacturing and selling a product called Island Party Citronella Torch Fuel.

6. Defendant Dollar General Corporation is a corporation organized under the laws of the State of Tennessee. Its principal place of business is in Goodlettsville, Tennessee. It operates retail stores in Oklahoma in this judicial district. It is in the business of selling consumer products, including Island Party Citronella Torch Fuel, to retail customers in Oklahoma.

### JURISDICTION AND VENUE

7. The parties to this action are diverse since they are citizens of different States. The amount in controversy exceeds the sum of $75,000 exclusive of interest and costs. Jurisdiction of this action is proper pursuant to 28 U.S.C. §1332(a).

8. The incident which gives rise to this action occurred in Murray County, State of Oklahoma in the Chickasaw National Recreation Area, which is within the boundaries of this judicial district. Venue is proper with this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

9. Defendant Berry Plastics Corporation, Defendant Kerr Group, LLC and Defendant Kerr Group, Inc. manufactured and distributed into the stream of commerce child resistant caps of the type classified as Consumer Products Safety Commission Type IA. These caps contain an overcap and an undercap. A certain one of these caps is referred to herein as "The Cap." The undercap part of The Cap is referred to herein as "The Undercap." The overcap part of The Cap is referred to herein as "The Overcap."

10. Defendant HOC Industries manufactured and distributed into the stream of commerce in the regular course of its business a product called Island Party Citronella Torch Fuel. It is designed to be used as a fuel in torches to repel insects from picnics, parties and other gatherings where young children can be expected to be present. A certain unit of Island Party Citronella Torch Fuel was purchased by Christopher Bumpas. That unit is referred to herein as "The Product." The bottle part of The Product is referred to as "The Bottle." The liquid in The Bottle is referred to herein as "The Fuel." The Fuel is a class III A combustible petroleum distillate and can be harmful or fatal if swallowed. The Bottle was closed or capped with The Cap. The Bottle had two labels on it which are referred to herein as "The Labels."

11. Defendant Dollar General Corporation acquired The Product in the regular

course of its business. It sold The Product to Christopher Bumpas in one of its stores in Oklahoma in the regular course of its business.

12. Christopher Bumpas used The Product by opening it and pouring The Fuel into torches. On June 9, 2009, J.B. was at the Chickasaw National Recreation Area near Sulphur, Murray County, Oklahoma with Bettsy Bumpas and Christopher Bumpas and other family members. J.B. was about two years old. On that day Christopher Bumpas removed The Cap from The Bottle and poured some of The Fuel into various torches around the area where the family was camping. He then placed The Cap back on The Bottle and placed it on a picnic table. He then walked away from the picnic table. While he was away from the table, J.B. removed The Cap from The Bottle and drank a quantity of The Fuel. Christopher Bumpas saw J.B. drinking The Fuel and rushed to take The Bottle away from J.B. However, J.B. swallowed enough of The Fuel so that it caused J.B.'s death later that same day.

## THEORIES OF RECOVERY

13. The Product was defective because it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

14. The Cap was defective because it was not child resistant. J.B. was able to remove The Cap from The Bottle and drink The Fuel because The Cap was not child resistant. A properly functioning child resistant cap, such as a Consumer Products Safety Commission Type IA cap, was required to be on The Bottle. Such a cap consists of an overcap, or shell, and an undercap, which screws onto a bottle. A child resistant cap, such as a Consumer Products Safety Commission

Type IA cap, can be removed by pushing down on the overcap and then twisting the cap counter clockwise. This action causes the overcap to join with undercap. The undercap then engages the threads on the neck of the bottle and allows the cap to unscrew and come off the bottle. The Cap on The Bottle was not child resistant because The Undercap locked against The Overcap. This allowed The Cap to be removed without having to press down on it. Also, the inside thread diameter of The Undercap was larger than industry specifications for inside thread diameter. This caused The Cap to not close tightly on threads on The Bottle and permitted J.B. to remove The Cap and drink The Fuel.

15. The Product was also defective because The Defendants failed to provide warnings or instructions on The Labels about hazards related to The Product in order to prevent it from injuring J.B. The Labels did not warn that The Cap was not child resistant, or could become not child resistant. The Labels did not warn that The Cap might not fit tightly enough on The Bottle to provide protection to young children who try to remove The Cap and then drink The Fuel. The Labels did not warn the Bumpas family that The Cap could be rendered ineffective with extended exposure to The Fuel. The Labels did not instruct the Bumpas family to periodically test The Cap to assure that it would spin freely when NOT pushed down and that it remained child resistant during the entire time they possessed The Product. The Labels did not instruct the Bumpas family to test The Cap or The Undercap to assure that it properly engaged the threads of The Bottle tightly enough to provide protection to J.B. if J.B. tried to remove The Cap and drink The Fuel. The Labels did not instruct the Bumpas family on what steps to take to assure that The Cap and The Bottle were child resistant during the entire time

they possessed The Product. The Labels did not instruct the Bumpas family on what steps to take to assure that The Cap engaged the threads of The Bottle tightly enough to provide protection to J.B. if J.B. tried to remove The Cap and drink The Fuel.

## DAMAGES

16. The Product was the proximate cause of the death of J.B. The Defendants are therefore liable for the following actual damages in excess of $75,000:

    a. the medical and burial expenses.

    b. the physical and mental pain and anguish suffered by the J.B.

    c. The loss of anticipated services and support from J.B.

    d. the loss of companionship and love of J.B.

    e. the destruction of the parent-child relationship.

    g. the loss of monies expended by Bettsy Bumpas and Christopher Bumpas in support, maintenance and education of J.B.

17. The Defendants acted intentionally and with malice and in reckless disregard for the rights of J.B. and the Bumpas family and other persons who used Island Party Tike Torch Fuel or were present during its use. The Defendants either knew or should have known that caps, such as The Cap, on the bottles of torch fuel would not be child resistant because the overcaps and undercaps can lock together during the foreseeable use of the product or The Product. They knew or should have known that young children would be attracted to the products, including The Product, because the bottles and labels, including The Bottle and The Labels, were festive and attractive in appearance and because the

fuel, including The Fuel, resembled apple juice or other juices. They knew or should have known that young children so attracted would succeed in removing the cap, including The Cap, and ingest enough of the fuel, including The Fuel, to become very ill or die. The failure of the Defendants to provide reliable child resistant caps on Island Party Citronella Torch Fuel products and the their failure to warn about the cap's defects, while so making the products attractive to young children, created a serious hazard to the public. This hazard was death or serious injury to young children who might ingest fuel contained in bottles of Island Party Citronella Torch Fuel.

18. Plaintiff therefore seeks punitive damages from the Defendants in an amount in excess of $75,000.

### JURY TRIAL DEMANDED

19. Plaintiff demands a jury trial on all issues.

Respectfully submitted,

**CARR & CARR, ATTORNEYS**

Patrick E. Carr, OBA #1506
pcarr@carrcarr.com
A. Laurie Koller, OBA #16857
lkoller@carrcarr.com
4416 South Harvard Avenue
Tulsa, OK 74135
Phone:      (918) 747-1000
Fax:           (918) 747-7284

and,

Tye H. Smith, OBA #14595
tyesmith@carrcarrokc.com
Direct Line: (405) 234-2118
John Branum, OBA #20165
jbranum@carrcarrokc.com
Direct Line: (405) 234-2113
1350 SW 89th Street
Oklahoma City, OK 73159
Phone:       (405) 691-1600
Facsimile:   (405) 234-2128
*Attorneys for Plaintiffs*